# United States District Court
## District of Utah



**Gary P. Serdar**
Clerk of Court

**Alison J. Adams**
Chief Deputy Clerk

October 24, 2025

Michael K. Hepworth
HEPWORTH & ASSOCIATES
320 W 500 S STE 200
BOUNTIFUL, UT 84010

RE:     NOTICE OF APPEAL
        Lichfield v. Kubler et al
        Plaintiff/Appellant  Defendant/Appellee
        Lower Docket: 2:24-cv-00458-JNP

The notice of appeal for this case has been filed.

**RETAINED** Counsel for the appellant is instructed to download the "Initial Appeal Documents and Instructions" for this appeal from www.ca10.uscourts.gov    Please follow the instructions for Transcript Order Form and Docketing Statement (all parties represented by counsel) regarding counsel's responsibility for compliance. For specific requirements concerning transcripts, records on appeal, briefs and appendices to briefs, please refer to the Federal Rules of Appellate Procedure and the Rules of the Tenth Circuit Court of Appeals. Rules of the Tenth Circuit are available at www.ca10.uscourts.gov.

Counsel and the Tenth Circuit will receive the following via CM/ECF (If counsel or party are not e-filers, they will receive these documents by mail): <u>Order/Judgment being appealed from</u>, <u>Notice of Appeal</u>, <u>Letter of Transmission of the Preliminary Record on Appeal</u>, <u>Docket Sheet</u>. This case does not contain any sealed entries or documents.

Sincerely,

Gary P. Serdar, Clerk

By: /s/

Jennifer Jensen
Generalist Clerk

**cc**: Clerk, U.S. Court of Appeals, Tenth Circuit
Court Reporter: Laura Robinson
District: 1088
Jurisdiction: Diversity
Fee Status: Paid

Judge Jill N Parrish
Counsel of Record
Division: Central

ACCO,APPEAL,CLOSED,OPEN_MJ

Email All Attys

Email All Attys and Secondary Emails

# US District Court Electronic Case Filing System
## District of Utah (Central)
## CIVIL DOCKET FOR CASE #: <u>2:24–cv–00458–JNP</u>

Lichfield v. Kubler et al

Assigned to: Judge Jill N. Parrish

Cause: 28:1332 Diversity–Libel,Assault,Slander

Date Filed: 06/25/2024

Date Terminated: 09/29/2025

Jury Demand: Plaintiff

Nature of Suit: 320 Assault Libel & Slander

Jurisdiction: Diversity

**<u>Plaintiff</u>**

**Narvin Lichfield**
*an individual*

represented by **Sarah Spitzer**
HEPWORTH & ASSOCIATES
320 W 500 S STE 200
BOUNTIFUL, UT 84010
801–872–2222
Email: <u>sspitzer@hepworthlegal.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 19348*
*Bar Status: Active*

**Michael K. Hepworth**
HEPWORTH & ASSOCIATES
320 W 500 S STE 200
BOUNTIFUL, UT 84010
(801)872–2222
Email: <u>michael@hepworthlegal.com</u>
*ATTORNEY TO BE NOTICED*
*Bar Number: 15157*
*Bar Status: Active*

**Christoffer Binning**
124 E 1370 S
FARMINGTON, UT 84025
801–875–8226
Email: <u>c.binning@icloud.com</u>
*TERMINATED: 07/14/2025*
*ATTORNEY TO BE NOTICED*
*Bar Number: 17942*
*Bar Status: Active*

V.

**<u>Defendant</u>**

1

**Katherine Kubler**                    represented by    **David W. Tufts**
*an individual*                                           DENTONS DURHAM JONES &
                                                          PINEGAR PC
                                                          111 S MAIN ST STE 2400
                                                          PO BOX 4050
                                                          SALT LAKE CITY, UT 84110–4050
                                                          801–415–3000
                                                          Fax: 801–415–3500
                                                          Email: david.tufts@dentons.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Bar Number: 8736*
                                                          *Bar Status: Active*

                                                          **Jacqueline A. Giannini**
                                                          DENTONS US LLP
                                                          233 S WACKER DR STE 5900
                                                          CHICAGO, IL 60606
                                                          312–876–2395
                                                          Email: jacqui.giannini@dentons.com
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Bar Number:*
                                                          *Bar Status: Phv*

                                                          **Gregory R. Naron**
                                                          DENTONS US LLP
                                                          233 S WACKER DR STE 7800
                                                          CHICAGO, IL 60606
                                                          312–876–2481
                                                          Email: gregory.naron@dentons.com
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Bar Number:*
                                                          *Bar Status: Phv*

                                                          **Ian Kinghorn**
                                                          DENTONS DURHAM JONES &
                                                          PINEGAR PC
                                                          111 S MAIN ST STE 2400
                                                          PO BOX 4050
                                                          SALT LAKE CITY, UT 84110–4050
                                                          801–573–2604
                                                          Email: ian.kinghorn@dentons.com
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Bar Number: 17717*
                                                          *Bar Status: Active*

                                                          **Natalie J. Spears**
                                                          DENTON US LLP
                                                          233 S WACKER DR STE 7800

CHICAGO, IL 60606
312–876–2556
Email: natalie.spears@dentons.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Defendant**

**Netflix Inc**                    represented by  **David W. Tufts**
*a Delaware corporation*                           (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*
                                                    *Bar Number: 8736*
                                                    *Bar Status: Active*

                                                    **Jacqueline A. Giannini**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*
                                                    *Bar Number:*
                                                    *Bar Status: Phv*

                                                    **Gregory R. Naron**
                                                    (See above for address)
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*
                                                    *Bar Number:*
                                                    *Bar Status: Phv*

                                                    **Ian Kinghorn**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*
                                                    *Bar Number: 17717*
                                                    *Bar Status: Active*

                                                    **Natalie J. Spears**
                                                    (See above for address)
                                                    *PRO HAC VICE*
                                                    *ATTORNEY TO BE NOTICED*
                                                    *Bar Number:*
                                                    *Bar Status: Phv*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/25/2024 | 1 | COMPLAINT against All Defendants (Filing fee $ 405, receipt number AUTDC–5105425) filed by Narvin Lichfield. (Binning, Christoffer) (Entered: 06/25/2024) |
| 06/25/2024 | | |

| | | Magistrate Judge Cecilia M. Romero added.<br><br>Case number will now read **2:24–cv–00458–CMR.** Please make changes to document captions accordingly. (kec) (Entered: 06/25/2024) |
|---|---|---|
| 06/25/2024 | 2 | NOTICE OF DEFICIENCY re 1 Complaint. The Civil Cover Sheet is missing or incomplete. All civil actions presented for filing must be accompanied by a completed Civil Cover Sheet. See Local Rule DUCivR3–4. Counsel must file a complete Civil Cover Sheet JS44 immediately. (kec) (Entered: 06/25/2024) |
| 06/25/2024 | 3 | Civil Cover Sheet (JS44)<br>Civil Summons may be issued electronically. Prepare the summons using the courts PDF version and email it to utdecf_clerk@utd.uscourts.gov for issuance, filed by Narvin Lichfield. (Binning, Christoffer) (Entered: 06/25/2024) |
| 06/26/2024 | 4 | ORDER TO PROPOSE SCHEDULE – See order for details. Signed by Magistrate Judge Cecilia M. Romero on 6/26/2024. (haa) (Entered: 06/26/2024) |
| 06/27/2024 | 5 | AMENDED COMPLAINT against All Defendants with Jury Demand. filed by Narvin Lichfield. (Binning, Christoffer) (Entered: 06/27/2024) |
| 06/27/2024 | 6 | Summons Issued Electronically as to Katherine Kubler.<br>Instructions to Counsel:<br>1. Click on the document number.<br>2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF.<br>3. Print the issued summons for service. (kec) (Entered: 06/27/2024) |
| 06/27/2024 | 7 | Summons Issued Electronically as to Netflix, Inc.<br>Instructions to Counsel:<br>1. Click on the document number.<br>2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF.<br>3. Print the issued summons for service. (kec) Modified by adding the correct defendant's name on 6/27/2024 (kec). (Entered: 06/27/2024) |
| 07/09/2024 | 8 | ~~RETURN OF SERVICE Executed for Personal served on Netflix, Inc. c/o Michelle Fowler on July 3, 2024, filed by Plaintiff Narvin Lichfield. (Binning, Christoffer)~~ Modified on 7/9/2024 – stricken as improperly filed. (alf). (Entered: 07/09/2024) |
| 07/09/2024 | 9 | NOTICE OF DEFICIENCY re 8 Return of Service. The document is stricken as improperly filed. Please refile using the event "Summons Returned Executed". The clerk requests the filer of the original document to refile the pleading. The new pleading will receive a new document number on the docket. (alf) (Entered: 07/09/2024) |
| 07/09/2024 | 10 | SUMMONS Returned Executed by Narvin Lichfield. Summons served on Netflix, Inc., on July 3, 2024. (Binning, Christoffer) (Entered: 07/09/2024) |
| 07/19/2024 | 11 | SUMMONS Returned Executed by Narvin Lichfield. Summons served on Katherine Kubler, on 07/19/2024. (Binning, Christoffer) (Entered: 07/19/2024) |
| 07/19/2024 | 12 | MOTION for Extension of Time to File Answer re 5 Amended Complaint filed by Defendants Katherine Kubler, Netflix, Inc.. (Attachments: # 1 Text of Proposed Order) Attorney David W. Tufts added to party Katherine Kubler(pty:dft), Attorney David W. Tufts added to party Netflix, Inc.(pty:dft)(Tufts, David) Modified on 7/22/2024 to fix event type (alf). (Entered: 07/19/2024) |

| 07/22/2024 | 13 | NOTICE OF PRESIDING MAGISTRATE JUDGE ASSIGNMENT – This case is assigned to a magistrate judge. Under 28 U.S.C. 636(c), Fed. R. Civ. P. 73, and DUCivR 72–4, you are hereby notified that a magistrate judge for the District of Utah may conduct any or all proceedings in this case, including a jury or bench trial and entry of a final judgment. Exercise of this jurisdiction by the magistrate judge is permitted only if all parties voluntarily sign and return the form. To consent, return the Consent Form to the clerk's office within 21 days via email at consents@utd.uscourts.gov or mail to the address on the form. **Please do not efile the Consent Form in the case.** Notice emailed or mailed to Defendants Katherine Kubler, Netflix, Inc., Plaintiff Narvin Lichfield. Form due by 8/12/2024. (mh) (Entered: 07/22/2024) |
|---|---|---|
| 07/22/2024 | 14 | ORDER granting 12 Motion for Extension of Time to Answer. Answer deadline updated for All Defendants to 8/30/2024. Signed by Magistrate Judge Cecilia M. Romero on 7/22/2024. (alf) (Entered: 07/22/2024) |
| 07/22/2024 | 15 | NOTICE of Appearance by Ian Kinghorn on behalf of Katherine Kubler, Netflix, Inc. (Kinghorn, Ian) (Entered: 07/22/2024) |
| 07/22/2024 | 16 | MOTION for Admission Pro Hac Vice of Jacqueline A. Giannini , Registration fee $ 50, receipt number AUTDC–5131744, <br><br> Attorneys awaiting Pro Hac Vice admission should immediately register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Registration requests will not be approved until the court has granted the pro hac vice motion. Instructions are available on the court's website at https://www.utd.uscourts.gov/cmecf–electronic–case–filing. <br><br> filed by Defendants Katherine Kubler, Netflix, Inc.. (Attachments: # 1 Pro Hac Vice App – Giannini, # 2 Text of Proposed Order)(Tufts, David) (Entered: 07/22/2024) |
| 07/22/2024 | 17 | MOTION for Admission Pro Hac Vice of Gregory R. Naron , Registration fee $ 50, receipt number AUTDC–5131751, <br><br> Attorneys awaiting Pro Hac Vice admission should immediately register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Registration requests will not be approved until the court has granted the pro hac vice motion. Instructions are available on the court's website at https://www.utd.uscourts.gov/cmecf–electronic–case–filing. <br><br> filed by Defendants Katherine Kubler, Netflix, Inc.. (Attachments: # 1 Pro Hac Vice App – Naron, # 2 Text of Proposed Order)(Tufts, David) (Entered: 07/22/2024) |
| 07/22/2024 | 18 | MOTION for Admission Pro Hac Vice of Natalie J. Spears , Registration fee $ 50, receipt number AUTDC–5131755, <br><br> Attorneys awaiting Pro Hac Vice admission should immediately register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Registration requests will not be approved until the court has granted the pro hac vice motion. Instructions are available on the court's website at |

| | | |
|---|---|---|
| | | https://www.utd.uscourts.gov/cmecf−electronic−case−filing. |
| | | filed by Defendants Katherine Kubler, Netflix, Inc.. (Attachments: # 1 Pro Hac Vice App − Spears, # 2 Text of Proposed Order)(Tufts, David) (Entered: 07/22/2024) |
| 07/23/2024 | 19 | NOTICE OF AVAILABILITY OF JUDICIAL SETTLEMENT CONFERENCE. For the benefit of the public and the bar, the District of Utah offers judicial settlement conference as an alternative for dispute resolution assistance in all civil cases and bankruptcy adversary proceedings. The court offers this alternative because, when compared with litigation, it can resolve a dispute faster, at less expense, and with solutions that are better able to meet the parties' needs and interests. Parties may file a stipulated motion for judicial settlement conference. A form motion is available on the court's website. Notice e−mailed or mailed to Defendants Katherine Kubler, Netflix, Inc., Plaintiff Narvin Lichfield. (alf) (Entered: 07/23/2024) |
| 07/23/2024 | 20 | ORDER granting 16 Motion for Admission Pro Hac Vice of Attorney Jacqueline A. Giannini for Katherine Kubler and Netflix, Inc.. <br><br> *Attorneys admitted Pro Hac Vice must register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Instructions are available at https://www.utd.uscourts.gov/cmecf−electronic−case−filing.***A Pro Hac Vice Attorney who fails to register for CM/ECF access will not receive notifications of electronic filings.*** <br><br> *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at https://www.utd.uscourts.gov/rules−practice.* <br><br> Signed by Magistrate Judge Cecilia M. Romero on 7/23/2024. (alf) (Entered: 07/23/2024) |
| 07/23/2024 | 21 | ORDER granting 17 Motion for Admission Pro Hac Vice of Attorney Gregory R. Naron for Katherine Kubler and Netflix, Inc.. <br><br> *Attorneys admitted Pro Hac Vice must register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Instructions are available at https://www.utd.uscourts.gov/cmecf−electronic−case−filing.***A Pro Hac Vice Attorney who fails to register for CM/ECF access will not receive notifications of electronic filings.*** <br><br> *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at https://www.utd.uscourts.gov/rules−practice.* <br><br> Signed by Magistrate Judge Cecilia M. Romero on 7/23/2024. (alf) (Entered: 07/23/2024) |
| 07/23/2024 | 22 | ORDER granting 18 Motion for Admission Pro Hac Vice of Attorney Natalie J. Spears for Katherine Kubler and Netflix, Inc.. <br><br> *Attorneys admitted Pro Hac Vice must register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Instructions are available at* |

| | | |
|---|---|---|
| | | *https://www.utd.uscourts.gov/cmecf−electronic−case−filing.* **A Pro Hac Vice Attorney who fails to register for CM/ECF access will not receive notifications of electronic filings.** |
| | | *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at* *https://www.utd.uscourts.gov/rules−practice.* |
| | | Signed by Magistrate Judge Cecilia M. Romero on 7/23/2024. (alf) (Entered: 07/23/2024) |
| 07/31/2024 | 23 | CORPORATE DISCLOSURE STATEMENT under FRCP 7.1 filed by Defendants Katherine Kubler, Netflix, Inc.. (Tufts, David) (Entered: 07/31/2024) |
| 08/07/2024 | 24 | RECEIVED Consent/Reassignment Form from Defendants Katherine Kubler and Netflix, Inc.. (mh) (Entered: 08/07/2024) |
| 08/13/2024 | 25 | NOTICE OF NON−CONSENT Consent to the jurisdiction of the Magistrate Judge under DUCivR 72−4 has not been obtained. Case randomly assigned to Judge Jill N. Parrish and Magistrate Judge Cecilia M. Romero. Magistrate Judge is automatically referred under 28 U.S.C636(b)(1)(A). Magistrate Judge Cecilia M. Romero no longer assigned as the presiding judge to the case. (mh) (Entered: 08/13/2024) |
| 08/21/2024 | 26 | Stipulated MOTION for Leave to File Excess Pages , MOTION for Extension of Time to File Answer re 5 Amended Complaint filed by Defendants Katherine Kubler, Netflix, Inc.. (Attachments: # 1 Text of Proposed Order) Motions referred to Cecilia M. Romero.(Tufts, David) (Entered: 08/21/2024) |
| 08/22/2024 | 27 | ORDER granting 26 Motion for Leave to File Overlength Memoranda and Extensions of Time. Plaintiff's Response to Defendants' Motions is due October 18, 2024, and Defendants' Reply is due November 12, 2024. Signed by Magistrate Judge Cecilia M. Romero on 8/22/24. (dle) (Entered: 08/22/2024) |
| 08/30/2024 | 28 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, MOTION to Strike 5 Amended Complaint *Pursuant to Anti−Slapp Acts* filed by Defendants Katherine Kubler, Netflix, Inc.. Motions referred to Cecilia M. Romero.(Spears, Natalie) Modified on 9/3/2024: removed repetitive entry text (alt) (Entered: 08/30/2024) |
| 08/30/2024 | 29 | REQUEST for Judicial Notice re 28 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, MOTION to Strike 5 Amended Complaint *Pursuant to Anti−Slapp Acts* filed by Defendants Katherine Kubler, Netflix, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19)(Spears, Natalie) Modified on 9/3/2024: removed repetitive entry text (alt) (Entered: 08/30/2024) |
| 08/30/2024 | 30 | NOTICE OF NONELECTRONIC FILING of Exhibits 1A − 1C, Exhibit 14 and Exhibits 15A − 15B filed by Defendants Katherine Kubler, Netflix, Inc. re 29 Request,,, (Spears, Natalie) (Entered: 08/30/2024) |
| 08/30/2024 | 31 | AFFIDAVIT/DECLARATION of Katherine Kubler in Support re 28 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Strike 5 Amended Complaint *(Defendants' Rule 12(B)(6) Motion to Dismiss and Special Motion to Strike Pursuant to Anti−Slapp Acts) (Declaration of Katherine Kubler solely in Support of Special Motion to Strike First Amended Complaint Pursuant to Anti−Slapp Acts)* filed |

| | | by Defendants Katherine Kubler, Netflix, Inc.. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u>5</u> Exhibit E)(Spears, Natalie) (Entered: 08/30/2024) |
|---|---|---|
| 09/03/2024 | <u>32</u> | <span style="color:red">CIVIL STANDING ORDER Signed by Judge Jill N. Parrish on 9/3/2024. (lwh)</span> (Entered: 09/03/2024) |
| 09/03/2024 | 33 | EXHIBITS 1A−1C, 14, and 15A−15B re <u>29</u> Request for Judicial Notice in support of <u>28</u> MOTION to Dismiss for Failure to State a Claim MOTION to Strike <u>5</u> Amended Complaint *Pursuant to Anti−Slapp Acts*, filed by Katherine Kubler, Netflix Inc, consisting of 4 MP4 files and 2 MP3 files on a single USB flash drive. The files are not uploaded to the docket due to non−PDF file type and the drive will be retained in a case file folder in the Clerk's Office while the case is active, and according to the retention schedule set forth by the Judicial Conference thereafter. (alt) (Entered: 09/03/2024) |
| 09/03/2024 | | Modification of Docket re <u>28</u> MOTION to Dismiss for Failure to State a Claim MOTION to Strike <u>5</u> Amended Complaint *Pursuant to Anti−Slapp Acts*, <u>29</u> Request. Repetitive text removed from entries and second dft name corrected to conform more closely with this court's "Standards and Guidelines for Adding Parties" (punctuation marks removed from name). (alt) (Entered: 09/03/2024) |
| 09/04/2024 | <u>34</u> | NOTICE OF ACKNOWLEDGMENT of Civil Standing Order <u>32</u> filed by Defendants Katherine Kubler, Netflix Inc (Tufts, David) (Entered: 09/04/2024) |
| 10/18/2024 | <u>35</u> | MEMORANDUM in Opposition re <u>28</u> MOTION to Dismiss for Failure to State a Claim MOTION to Strike <u>5</u> Amended Complaint *Pursuant to Anti−Slapp Acts* filed by Plaintiff Narvin Lichfield. (Binning, Christoffer) (Entered: 10/18/2024) |
| 11/12/2024 | <u>36</u> | REPLY to Response to Motion re <u>28</u> MOTION to Dismiss for Failure to State a Claim MOTION to Strike <u>5</u> Amended Complaint *Pursuant to Anti−Slapp Acts* filed by Defendants Katherine Kubler, Netflix Inc. (Spears, Natalie) (Entered: 11/12/2024) |
| 11/15/2024 | 37 | Motions No Longer Referred: <u>28</u> MOTION to Dismiss for Failure to State a Claim MOTION to Strike <u>5</u> Amended Complaint *Pursuant to Anti−Slapp Acts*. District Judge Jill N. Parrish will handle the motion. (jfm) (Entered: 11/15/2024) |
| 06/23/2025 | <u>38</u> | NOTICE OF ACKNOWLEDGMENT of Civil Standing Order <u>32</u> filed by Plaintiff Narvin Lichfield (Binning, Christoffer) (Entered: 06/23/2025) |
| 06/26/2025 | <u>39</u> | REQUEST for Oral Argument re <u>28</u> MOTION to Dismiss for Failure to State a Claim MOTION to Strike <u>5</u> Amended Complaint *Pursuant to Anti−Slapp Acts* filed by Plaintiff Narvin Lichfield. (Binning, Christoffer) (Entered: 06/26/2025) |
| 07/14/2025 | <u>40</u> | NOTICE OF WITHDRAWAL OF COUNSEL of Christoffer T. Binning filed by Christoffer Binning on behalf of Narvin Lichfield. Counsel selected to discontinue to receive notice on this case. (Binning, Christoffer) (Entered: 07/14/2025) |
| 07/15/2025 | <u>41</u> | NOTICE of Appearance by Sarah Spitzer on behalf of Narvin Lichfield (Spitzer, Sarah) (Entered: 07/15/2025) |
| 08/14/2025 | 42 | **<u>NOTICE OF HEARING ON MOTION</u>** re: <u>28</u> MOTION to Dismiss for Failure to State a Claim MOTION to Strike <u>5</u> Amended Complaint *Pursuant to Anti−Slapp Acts* : (Notice generated by JNP Chambers) Motion Hearing set for 9/18/2025 at 01:00 PM **VIA ZOOM** before Judge Jill N. Parrish. (lwh) (Entered: 08/14/2025) |

| 09/18/2025 | 43 | Minute Entry for proceedings held before Judge Jill N. Parrish: Motion Hearing held on 9/18/2025 re 28 MOTION to Dismiss for Failure to State a Claim MOTION to Strike 5 Amended Complaint *Pursuant to Anti−Slapp Acts* filed by Katherine Kubler, Netflix Inc. All parties appear via zoom. After hearing oral argument, the court took the matter under advisement. Court adjourned. Attorney for Plaintiff: Michael K. Hepworth, Sarah Spitzer, Attorney for Defendant: Jacqueline A. Giannini, Gregory R. Naron, Natalie J. Spears, David W. Tufts. Court Reporter: Laura Robinson. Recording: Zoom.(lwh) (Entered: 09/19/2025) |
| 09/29/2025 | 44 | MEMORANDUM DECISION AND ORDER granting 28 Motion to Dismiss and for Relief Under Anti−SLAPP Acts. Signed by Judge Jill N. Parrish on 9/29/2025. (dle) (Entered: 09/29/2025) |
| 09/29/2025 | 45 | JUDGMENT: IT IS ORDERED AND ADJUDGED that plaintiff Narvin Lichfield's action is dismissed. Case Closed. Magistrate Judge Cecilia M. Romero no longer assigned to case. Signed by Judge Jill N. Parrish on 9/29/2025. (dle) (Entered: 09/29/2025) |
| 10/08/2025 | 46 | Stipulated MOTION for Extension of Time to file Fee Petition filed by Defendants Katherine Kubler, Netflix Inc. (Attachments: # 1 Text of Proposed Order)(Spears, Natalie) (Entered: 10/08/2025) |
| 10/08/2025 | 47 | DOCKET TEXT ORDER granting 46 Motion for Extension of Time. The defendants shall have until October 27, 2025 to file a motion for attorney fees. Signed by Judge Jill N. Parrish on 10/8/25. (ksb) (Entered: 10/08/2025) |
| 10/14/2025 | 48 | **RESTRICTED DOCUMENT** NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Zoom Motion Hearing Motion to Dismiss held on September 18, 2025 before Judge Jill Parrish. Court Reporter/Transcriber Laura W. Robinson, RPR, FCRR, CSR, CP, Telephone number (801)201−9731. <br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Please review the transcript within 14 days after receiving this notice to determine if personal data identifiers need to be redacted. If redaction is not required, the transcript will be made electronically available 90 days after this notice. If redaction of personal identifies is needed, a party must file a Notice of Intent to Request Redaction within 21 days after receiving this notice. Within 42 days after receiving this notice, a party must file a Redaction Request identifying the information that must be redacted. Please review DUCivR 5.2−1 for additional information about redacting personal identifiers or protected information. The Attorney Filing the Notice of Intent To Request Redaction and Redaction request must send a copy to the court reporter. The court will not send a copy to the court reporter.** <br><br>**Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Request Redaction due 11/4/2025. Redaction Request due 11/25/2025. Redacted Transcript Deadline set for 12/16/2025. Release of Transcript Restriction set for 1/12/2026. (jrj) (Entered: 10/14/2025)** |
| 10/14/2025 | 49 | Transcript Purchased by: Michael Hepworth re 48 transcript(s) of September 18, 2025. (jrj) (Entered: 10/14/2025) |
| 10/24/2025 | 50 | |

|  |  | NOTICE OF APPEAL filed by Narvin Lichfield. Appeals to the USCA for the 10th Circuit. Filing fee $ 605, receipt number AUTDC–5595140. (Hepworth, Michael) (Entered: 10/24/2025) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NARVIN LICHFIELD,<br><br>        Plaintiff,<br><br>v.<br><br>KATHERINE KUBLER and NETFLIX, INC.,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS AND FOR RELIEF UNDER ANTI-SLAPP ACTS<br><br>Case No. 2:24-cv-00458-JNP-CMR<br><br>District Judge Jill N. Parrish |

Narvin Lichfield sued Katherine Kubler and Netflix, Inc. (collectively, the defendants), alleging that a documentary series created by Kubler and streamed on Netflix defamed him. Lichfield asserts claims for defamation per se, defamation, false light, intentional infliction of emotional distress, and civil conspiracy. Before the court is the defendants' motion to dismiss this action and for relief under the Anti-SLAPP Act of either California or Utah. ECF No. 28. The motion is GRANTED.

# BACKGROUND[1]

During her sophomore year of high school, Kubler's parents enrolled her in a private Christian boarding school in Long Island, New York. A few months after she arrived, the school expelled her under its zero-tolerance policy because she had been caught with an alcoholic beverage. Due to her expulsion, Kubler's parents decided to place her in a lockdown behavior modification program located in Upstate New York called The Academy at Ivy Ridge, which was marketed to parents as a boarding school for troubled teens. Kubler spent the next 15 months at Ivy Ridge without being allowed to go home.

Kubler later went to film school and began a career in the entertainment industry. She decided to create a documentary series about Ivy Ridge. Kubler produced and directed a three-part series called *The Program: Cons, Cults, and Kidnapping*, which streamed on Netflix.

The first episode of *The Program* describes the experiences of Kubler and other teenagers at Ivy Ridge. Kubler recounted being strip searched upon arrival and then introduced to the facility's strict regime of rules, including: no talking at all unless directed to do so, no going outside, no looking outside the windows, no eye contact with other students, no touching other students, no looking in the mirror, and no smiling. One of the most important rules was that detainees could not ask their parents to bring them home, which was labeled as manipulation.

---

[1] "Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). But a court may consider a document submitted by a defendant if (1) "the document is referred to in the complaint," (2) it "is central to the plaintiff's claim," and (3) the defendant submits "an indisputably authentic copy to the court." *Id.* In this case, the basis for all of the Lichfield's claims is the Netflix documentary series entitled *The Program: Cons, Cults, and Kidnapping*, which is explicitly referred to in the operative complaint. The defendants have submitted an undisputably authentic copy of the series to the court. Accordingly, the court considers the content of this series in reciting the facts of the case and in resolving the motion to dismiss.

2

These rules were enforced 24 hours a day. Teenagers detained at Ivy Ridge could earn some privileges by advancing through its level system, which was called "working the program." Detainees gained points by complying with all of the rules, and if enough points were earned, teens could advance to the next level. Conversely, even minor infractions would result in the loss of points or levels. A detainee who reached level three could have a 15-minute monitored phone call with his or her parents once a month. At level four, the detainee could talk and look out of windows. But these upper-level detainees were required to become enforcers by reporting infractions committed by other detainees. Detainees were not allowed to leave Ivy Ridge until they reached level six. Kubler opined that the leaders of Ivy Ridge intentionally made it nearly impossible to advance to level six in order to keep the detainees in the program for as long as possible.

If the point system failed to induce compliance, Kubler alleged that more drastic measures were taken. Detainees would be violently taken to the floor and then transported to a small isolation room where they were required to hold stress positions or lay face down on the floor for hours. Some detainees in the isolation rooms were physically assaulted or given only two pieces of bread and eight ounces of milk for their meals.

The primary theme of the second episode of *The Program* is Kubler's contention that Ivy Ridge employed time-tested mind control techniques on teenagers detained in the facility. Kubler asserted, for example, that every six weeks detainees were required to participate in a seminar that lasted between two and four days. Some of the seminar activities included requiring participants to crawl on the floor like a baby for an hour and forcing them to scream and beat the floor as hard as they could with towels wrapped in duct tape until complete exhaustion. Detainees who stopped participating before time was called were sent to an alternative seminar called "breakpoint" because the intent of the seminar was to break the detainee. Breakpoint participants were required

3

to perform tasks such as chanting a meaningless mantra in unison for eight hours straight until they entered a dissociative trance. Kubler asserted that these activities—in conjunction with inadequate food, sleep deprivation, and the weaponization of embarrassing personal history details or coerced confessions—were intended to break down all resistance and to convince them that their only option was to surrender themselves to "the program."

Parents were also put through a separate series of seminars held about once a month. In these seminars, parents participated in guided meditation and engaged in group activities designed to get them outside of their comfort zone. Kubler contended that the central message of the parent seminars was not to give in to their children's requests to come home and not to remove their children from the facility before they completed the program.

In the third episode of *The Program*, entitled "Follow the Money," Kubler examines the larger troubled-teen industry. In particular, she focuses on the history and structure of the World Wide Association of Specialty Programs (WWASP), which was founded by Robert Lichfield. In 1988, Robert Lichfield founded his first facility for troubled teens in La Verkin, Utah. He later created WWASP, which acted as an umbrella organization for numerous other troubled teen facilities that were established across the United States and around the world, including Ivy Ridge. WWASP provided the template for running a troubled teen program to each member facility. It also provided services, such as supervising media relations, and putting on seminars. In exchange, the member facilities paid WWASP a fee for each teen detained in the facility. Kubler asserted that Robert Lichfield accumulated a great deal of personal wealth through WWASP by charging parents exorbitant fees while spending as little as possible on staffing and other expenses.

The third episode also examined other figures associated with WWASP, including Robert's brother, plaintiff Narvin Lichfield. Kubler asserted that Narvin Lichfield created the original

marketing materials for WWASP and pioneered the use of search engine optimization to ensure that parents searching for help with their teenagers on the internet would be directed to a WWASP website. Narvin Lichfield later opened and operated three troubled teen facilities under the WWASP umbrella: one in South Carolina and two in Costa Rica.

After *The Program* began streaming on Netflix, Narvin Lichfield sued Kubler and Netflix, asserting claims for defamation per se, defamation, false light, intentional infliction of emotional distress, and civil conspiracy. Lichfield alleged that the following statements found in the third episode of the documentary series were actionable:

(1) In the opening scene of the third episode, the camera focuses on several sections of a bulletin board with photographs of individuals, news articles, and biographical information about the pictured individuals attached to it. The first and second shots depicted low-level workers at Ivy Ridge and its director. The third shot showed pictures of individuals with ownership stakes in troubled teen facilities along with well-known politicians. The fourth shot depicted a picture of Narvin Lichfield next to a news article with the headline: "As Therapy Hikes Reviewed, Another Teen Dies in Program." While the camera progresses through these shots, Kubler provides the following voiceover: "It bothers me how people low on the totem pole end up taking the fall, and the people at the top seem to get away with murder. I knew if I really wanted to go after these places, I need to follow the money."

(2) In one scene of the third episode, Kubler went to a karaoke night at a public nightclub after seeing Narvin Lichfield's social media post inviting people to come. Kubler filmed both Lichfield and herself singing at the nightclub. During this scene, Kubler narrated the following voiceover:

5

> It was surreal to see Narvin in person—knowing everything I know about this guy, the children he abused, the parents he conned, all of the crimes he's gotten away with. . . . You know, all these people, they've gotten away with this stuff for so long. So, I think a lot of them really do think they got away with it. I think Narvin, I think Robert, they've gotten away with it for so long.

(3) Referring to the first Costa Rican troubled teen facility opened by Narvin Lichfield, called Dundee, Kubler stated: "Dundee was only open for 19 months before authorities were alerted to abuse, raided the facility, and Narvin was arrested."

Lichfield also alleged that the juxtaposition of his picture and the news article about the death of a teen during the opening scene of episode three implied that he was somehow involved with the death. And although Lichfield did not identify any specific statements made in the documentary series, the complaint also asserted that the series defamed him by "[c]laiming Plaintiff had exercised direct control in youth programs with the aim or understood purpose of abusing children" and by "[p]resenting statements that Plaintiff was effectively a mastermind and architect, along with his brother Robert, of an abusive system of youth programs." ECF No. 5 at ¶ 77.

Defendants Kubler and Netflix filed the instant motion seeking two forms of relief. First, they seek dismissal of Lichfield's action under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. Second, the defendants move to either strike Lichfield's claims pursuant to California's Anti-SLAPP statute or to dismiss the claims under Utah's Uniform Public Expression Protection Act (UPEPA). The defendants also request an award of fees and costs under these two statutes.

6

## ANALYSIS

### I.   MOTION TO DISMISS UNDER RULE 12(b)(6)

#### A.   *Legal Standard*

Rule 12(b)(6) provides that a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss, a court "accept[s] as true all well-pleaded factual allegations in the complaint." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). Although courts normally view these allegations "in the light most favorable to the plaintiff," *id.*, there are two caveats to this rule when determining whether a defamation claim brought under Utah law is subject to dismissal. To uphold constitutional protections of speech, courts do not draw inferences in favor of the plaintiff when determining (1) whether an allegedly defamatory statement is capable of a defamatory meaning or (2) whether the statement is one of fact or opinion. *Mathews v. McCown*, 2025 UT 34, ¶¶ 6, 98, --- P.3d ---.

#### B.   *Defamation and Defamation Per Se*

Lichfield asserts claims for defamation and defamation per se against the defendants based on statements and alleged inferences found in *The Program*. To state a claim for defamation, he must show that the defendants "published the statements concerning him, that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." *West v. Thomson Newspapers*, 872 P.2d 999, 1007–08 (Utah 1994). To state a claim for defamation per se, Lichfield must also show that the defamatory statements were "on their face, and without the aid of intrinsic

7

proof, . . . unmistakably recognized as injurious." *Seegmiller v. KSL, Inc.*, 626 P.2d 968, 977 n.7 (Utah 1981). If the statements are deemed defamatory per se, the plaintiff need not prove damages. *Id.*

The defendants argue that the court should dismiss the defamation and defamation per se claims. Because the defendants' arguments center on elements that are common to both of these causes of action, the court analyzes them jointly.

> 1)      Statements about seeming "to get away with murder" and getting away with abuse, conning parents, and unspecified crimes

In *The Program*, Kubler makes the following allegedly defamatory statements: (1) "It bothers me how people low on the totem pole end up taking the fall, and the people at the top seem to get away with murder" and (2) "the children he [Lichfield] abused, the parents he conned, all of the crimes he's gotten away with." The defendants argue that these statements are not actionable because they are constitutionally protected opinions rather than assertions of fact. The court agrees.

The free speech protections found in the Federal and Utah Constitutions limit liability for defamation. *Jensen v. Sawyers*, 130 P.3d 325, 336 (Utah 2005) ("Defamation claims always reside in the shadow of the First Amendment."); *West*, 872 P.2d at 1015 (holding that the Utah Constitution limits liability for defamation). Specifically, the Utah Constitution protects expressions of opinion from liability for defamation. "Because expressions of pure opinion fuel the marketplace of ideas and because such expressions are incapable of being verified, they cannot serve as the basis for defamation liability." *West*, 872 P.2d at 1015. In contrast, "[a]ssertions of fact, being objectively verifiable and much more capable of harming reputation, are not entitled to the same degree of protection afforded expressions of opinion." *Id.* Thus, in order to prove a defamation claim, a plaintiff must show that the defendant stated or implied facts that are both

false and defamatory. *Id.* Courts consider four non-exhaustive factors to distinguish facts from

opinions:

> (i) the common usage or meaning of the words used; (ii) whether the
> statement is capable of being objectively verified as true or false;
> (iii) the full context of the statement—for example, the entire article
> or column—in which the defamatory statement is made; and (iv) the
> broader setting in which the statement appears.

*Id.* at 1018. "Whether a statement is one of fact or opinion is a question of law for the court to

decide." *Mathews*, 2025 UT 34, ¶ 96.

Applying the *West* factors, the court determines that the "seem to get away with murder"

statement is an expression of opinion rather than fact. This statement employes the common idiom

"to get away with murder" to figuratively describe Kubler's view that the individuals who had

profited from troubled teen programs had avoided any negative consequences for owning or

operating them. Kubler's use of the introductory phrase "seem to" emphasizes that the statement

is used metaphorically, and not to literally accuse leaders and owners of these programs of being

culpable of the crime of murder. The broader context of the documentary series as a whole

reinforces this understanding of the phrase. Throughout the series, Kubler accuses these leaders of

profiting from an abusive system. But she does not accuse them of murder. Finally, this statement,

taken in context, is an expression of moral disapprobation that is not capable of being proved true

or false. Accordingly, Kubler's statement that leaders like Lichfield "seem to get away with

murder" is a constitutionally protected opinion.

The phrase "the children he abused, the parents he conned" also expresses an opinion.

Throughout the three-episode series, Kubler consistently expressed her view that the tactics

employed in WWASP-associated facilities were abusive and psychologically damaging. She also

opined that WWASP programs used manipulative techniques to encourage parents to keep their

children in facilities for as long as possible. And given her assessment that these programs were abusive and ineffective, she expressed her belief that the monthly fees were a waste of money. In the context of these expressed viewpoints, statements about the children Lichfield abused and the parents he conned are protected opinions. There is no way to objectively verify whether the WWASP methodology should be considered abusive or merely tough love for troubled teens. *See Rinsley v. Brandt*, 700 F.2d 1304, 1306–07,  (10th Cir. 1983) (holding that strong criticisms of a psychiatrist, including "God knows what other cruelties he calls treatment" and "What does it take to put a stop to such a man? How many more children must die?" were protected opinions). Nor is it possible to definitively ascertain whether parents were conned out of their money or whether it was well spent. *See Rizzuto v. Nexxus Prods. Co.*, 641 F. Supp. 473, 481 (S.D.N.Y. 1986) (holding that the phrase "don't be conned" was "no more than rhetorical hyperbole").

Similarly, Kubler's reference to "all of the crimes [Lichfield has] gotten away with" expresses a protected opinion. Accusing an individual of committing a specific criminal act is typically an assertion of fact. *See Mathews*, 2025 UT 34, ¶¶ 99–101 (holding that an accusation that a plaintiff "defrauded the entire community" was not a protected opinion because, in context, the best understanding of the statement "is that [the defendant] was accusing [the plaintiffs] of committing crimes and not offering opinions about their character or conduct"); *Hogan v. Winder*, 762 F.3d 1096, 1107 (10th Cir. 2014) (applying Utah law and holding that "[f]alse accusations of criminal conduct can be defamatory, of course"). But a speaker's use of words that may carry criminal connotations do not always constitute assertions of fact. In *Greenbelt Cooperative Publishing Association, Inc. v. Bresler*, for example, the Supreme Court held that the use of the term "blackmail" during a heated city council meeting did not amount to a criminal accusation. 398 U.S. 6, 13–14 (1970). The Court analyzed the elements of the crime of blackmail and reasoned

10

that the defendants never indicated that the plaintiff had engaged in conduct approximating criminal blackmail. *Id.* at 14 n.7. Instead, "the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the plaintiff's] negotiating position extremely unreasonable." *Id.* at 14.

In *The Program*, Kubler does not accuse Lichfield of specific criminal conduct. Indeed, her generic statement about unspecified crimes Lichfield had gotten away with provides no temporal or other limitation that would hint at a particular crime. *See Nunes v. Rushton*, <u>299 F. Supp. 3d 1216, 1232</u> (D. Utah 2018) (finding that a statement that the plaintiff should investigate whether she was "guilty of harassment" was a protected opinion because the defendant did "not allege or imply that [the plaintiff] committed any specific criminal acts"). Absent any indication as to what crimes Lichfield may have committed, it is difficult to conceive of what specific assertion of fact could be examined in a trial or how the statement could be proven true or false. In light of the generality of Kubler's statement, it is best understood as rhetorical hyperbole emphasizing Kubler's opinions regarding the tactics employed at WWASP faculties. *See Westmont Residential LLC v. Buttars*, <u>340 P.3d 183, 189</u> (Utah Ct. App. 2014) (holding that the defendant's use of the term "crooks" was "no more than rhetorical hyperbole" (citation omitted)). In other words, Kubler's statement amounts to an expression of a strong negative opinion akin to accusing Lichfield of "crimes against humanity" and not an assertion of provable fact.

The context in which the statement was made further emphasizes that it is no more than rhetorical hyperbole. In *The Program*, Kubler tells a personal story about her traumatic experiences as a teenager at Ivy Ridge and how that event strained her relationship with her father for many years thereafter. In the scene of the documentary where Kubler makes the "crimes" statement, she describes her reaction to seeing Lichfield in person in light of those personal experiences and her

11

investigation of the troubled-teen industry, stating: "It was surreal to see Narvin in person—knowing everything I know about this guy . . . ." Because Kubler's reference to "crimes" Lichfield "had gotten away with" was couched as a description of her visceral response in light of her personal experiences, a viewer would take the statement as a hyperbolic expression of strong opinion rather than an accusation of specific criminal conduct. *See Ferlauto v. Hamsher*, <u>74 Cal. App. 4th 1394, 1402</u>–03 (1999) (holding that in the context of a book describing the author's personal experiences and feeling regarding a lawsuit against her, a reasonable reader would take the author's statements as "highly partisan opinions" rather than assertions of fact); *West*, <u>872 P.2d at 1020</u> (holding that the fact that the allegedly defamatory statements appeared in editorial columns "as opposed to 'hard news'" indicated that they constituted protected opinions). Indeed, Kubler indicated that she was expressing her opinion by stating that she was articulating her personal thoughts about Lichfield getting away with it: "So, I think a lot of them really do think they got away with it."

In short, none of the statements regarding getting away with murder or getting away with unspecified crimes are actionable because they are protected opinions.

2)     Alleged defamatory implication from the image of the news article

Lichfield also alleges that the image showing his picture adjacent to a news article with the headline "As Therapy Hikes Reviewed, Another Teen Dies in Program" is defamatory. He argues that this juxtaposition would cause reasonable viewers to believe he was involved with or somehow responsible for the death referenced in the headline. Thus, Lichfield asserts a defamation-by-implication claim rather than by a direct statement. *See West*, <u>872 P.2d at 1011</u> (holding that under a defamation-by-implication claim, "it is the implication arising from the statement and the context in which it was made, not the statement itself, which forms the basis of

12

[the] claim"). When a plaintiff asserts a claim for defamation by implication, the court must first determine whether a reasonable factfinder could conclude that the underlying statement (or in this case, the underlying image) "conveys the allegedly defamatory implication." *Id* at 1019. In making this determination, courts must examine the context in which the underlying statement was made. *Id*. at 1011 n.18; *Hogan*, 762 F.3d at 1105–06 (10th Cir. 2014) (applying Utah law).

      Here, the context in which Lichfield's picture and the article were presented would not lead a reasonable viewer to believe that the documentary series implied that Lichfield was responsible for the death referenced in the headline. First, the scene in which the image appears does not lend itself to the alleged defamatory implication. During the introduction to episode three, Kubler employed the well-worn trope of an investigator pinning evidence to a bulletin board in an attempt to solve a case—or here, to "follow the money." She depicted a board covered with pictures of individuals who worked at Ivy Ridge, individuals who financed or owned troubled teen facilities, politicians, and leaders of WWASP and WWASP facilities. Interspaced between the pictures were various news articles about the troubled teen industry, LinkedIn profiles, and a variety of other documents. These disparate pictures and documents are crowded together on the board so that they overlap. At the center of the board is a map of the United States with red string attached to pins linking locations on the map with various documents on the board. For approximately fifteen seconds, the camera zooms in on various sections of the board. And for about two seconds, the camera focuses on a picture of Lichfield next to the article. Because the board represents a jumble of pictures and other documents mixed together that reference the troubled-teen industry as a whole, a reasonable viewer would not assign significance to the juxtaposition of Lichfield's picture and the article. Indeed, at this point in the documentary series, the viewer is unaware of who Narvin Lichfield is because the series does not even mention him until later in episode three.

13

Viewing this two-second shot in context of episode three as a whole also demonstrates that viewers would not draw the alleged defamatory inference. Later on in the episode, Kubler describes in detail Lichfield's role in the troubled-teen industry, including working on the marketing for WWASP and later opening and operating three WWASP facilities. Because episode three specified Lichfield's role in the industry, which had nothing to do with "therapy hikes" or other wilderness therapy programs, viewers would not infer that Lichfield had anything to do with a death during a therapy hike. Although episode three briefly addresses wilderness programs for troubled teens, it does not tie these programs in any way to Lichfield.

For these reasons, no reasonable factfinder could conclude that the image of Lichfield's picture next to an article about therapy hikes conveys a defamatory implication. Accordingly, the court dismisses the defamation and defamation per se claims to the extent that they are based on allegations of this defamatory inference. *See  Keisel v. Westbrook*, 542 P.3d 536, 552–53 (Utah Ct. App 2023) (affirming summary judgment in favor of a defendant on a defamation-by-implication claim because a reasonable fact finder could not have drawn the alleged defamatory inference).

> 3)    Statement that Lichfield had been arrested in Costa Rica

Lichfield claims that Kubler defamed him when she stated that Costa Rican authorities raided one of his facilities and arrested him. He acknowledges that this statement is true. But Lichfield argues that Kubler may nonetheless be held liable for stating the truth because she did not also say that Costa Rican authorities later dropped the charges against him. He contends that Kubler defamed him by "omitting information that would exonerate him or present a more balanced picture of his involvement in youth programs." ECF No. 35 at 13.

This claim fails as a matter of law because "truth is an absolute defense to an action for defamation." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 57 (Utah 1991). "The omission of additional

favorable information from an otherwise true publication does not render a statement materially false." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1108 (10th Cir. 2017). Lichfield asserts that the Restatement (Second) of Torts supports his incomplete truth argument. The provision he cites provides that a statement of opinion may be actionable "only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." RESTATEMENT (SECOND) OF TORTS § 566 (1977); *accord Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990) ("[E]xpressions of 'opinion' may often imply an assertion of objective fact."). On its face, this provision does not apply to true statements of fact. Accordingly, the court dismisses Lichfield's defamation and defamation per se claims to the extent that they rely on the arrest statement.

>   4)   Allegations that the series stated that he was a "mastermind"

In his complaint, Lichfield alleges that the defendants defamed him by "[c]laiming Plaintiff had exercised direct control in youth programs" and by "[p]resenting statements that Plaintiff was effectively a mastermind and architect, along with his brother Robert, of an abusive system of youth programs." ECF No. 5 at ¶ 77. In his briefing on this motion to dismiss, Lichfield does not specify the foundation for these claims, merely asserting that "the Series goes to great lengths to portray Lichfield as a central figure in the WWASP organization."

These allegations are not specific enough to support a defamation claim. When pleading a defamation claim, the plaintiff "must describe the nature or substance of the acts or words complained of." *Williams v. State Farm Ins. Co.*, 656 P.2d 966, 971 (Utah 1982). Specifically, the complaint "must set forth 'the language complained of . . . in *words* or *words* to that effect.'" *Id.* (citation omitted). Lichfield did not identify which declarations allegedly stated or implied that Lichfield was a "mastermind or architect" of WWASP. Nor is it evident from reviewing the documentary series what statements are being referenced in the complaint. Due to this complete

15

lack of specificity, the court dismisses the defamation and defamation per se claims to the extent that Lichfield alleges he was defamed by statements that he was a mastermind of an abusive system.

5)   Conclusion

The statements that Lichfield claims to be defamatory are either constitutionally protected opinions or absolutely privileged as true. Moreover, a reasonable viewer would not draw the alleged defamatory implication alleged in the complaint. Accordingly, the court dismisses the defamation and defamation per se claims.

C.   *False Light*

Lichfield asserts a false light claim based on the same statements and alleged inferences discussed above for the defamation and defamation per se claims. False light claims are very similar to defamation claims. *SIRQ, Inc. v. The Layton Companies, Inc.*, 379 P.3d 1237, 1246 (Utah 2016). Accordingly, "false light claims that arise from defamatory speech raise the same First Amendment concerns as are implicated by defamation claims." *Id*. The same principles that limit liability under defamation law also apply to false light claims. *Jensen v. Sawyers*, 130 P.3d 325, 336 (Utah 2005); *Keisel v. Westbrook*, 542 P.3d 536, 556–57 (Utah Ct, App. 2023). Accordingly, the court dismisses the false light claim for the same reasons that it dismisses the defamation claims.

D.   *Intentional Infliction of Emotional Distress*

Lichfield also asserts a claim for intentional infliction of emotional distress (IIED) based on the allegedly defamatory statements and inferences. Similar to a false light claim, constitutional protections of free speech also restrict liability for IIED claims. *Keisel v. Westbrook*, 542 P.3d 536, 556–57 (Utah Ct. App. 2023). In other words, "[a] plaintiff may not attempt an end-run around

16

First Amendment strictures protecting speech by instead suing for defamation-type damages under non-reputational tort claims." *Id.* at 556 (citation omitted). Thus, the court dismisses the IIED claim for the same reasons that the false light claim must be dismissed.

The IIED claim must also be dismissed because the statements that allegedly cause emotional distress are not egregious enough to support liability. In order to state a claim for IIED, the plaintiff must show that the defendant's "actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality." *Mackey v. Krause*, 2025 UT 37, ¶ 86, ---P.3d---. "It is difficult to satisfy the 'outrageous conduct' element," which requires "extraordinarily vile conduct, conduct that is atrocious, and utterly intolerable in a civilized community." *Id.* ¶ 87 (citation omitted). Applying this outrageous conduct standard to allegations that a defendant falsely published statements that a teacher (1) threw a rock at a student, striking the student on the stomach and (2) threw a student across the room into a wall, the Utah Supreme Court recently held that, as a matter of law, these allegedly false publications did not meet the "high bar" for outrageous conduct to support an IIED claim. *Id.* ¶ 93; *accord Bennett v. Jones, Waldo, Holbrook & McDonough*, 70 P.3d 17, 31 (Utah 2003) (affirming dismissal of IIED claim because allegations of abusive litigation tactics were not sufficiently outrageous or intolerable); *Franco v. The Church of Jesus Christ of Latter-day Saints*, 21 P.3d 198, 207 (Utah 2001) (affirming dismissal of IIED claim because an allegation that a church referred a parishioner to an unlicensed counselor was not sufficiently outrageous or intolerable).

In this case, the defendants published opinions about higher-ups seeming to get away with murder and that it was surreal for Kubler to finally see Lichfield in person in light of "the children he abused, the parents he conned, all of the crimes he's gotten away with." These assertions of

opinion are milder than the specific allegations of abuse in *Mackey*. Thus, Lichfield's IIED claim similarly fails to clear the "high bar" for outrageous conduct. The court, therefore, dismisses the IIED claim for this additional reason.

E.     *Civil Conspiracy*

"To prove civil conspiracy, five elements must be shown: '(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.'" *Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1290 n.17 (Utah 1993). Lichfield based his civil conspiracy claim on the alleged unlawful acts of defamation and portraying him in a false light. Because these claims fail as a matter of law, Lichfield cannot satisfy the unlawful acts element. Accordingly, the court dismisses the civil conspiracy claim as well.

II.     **MOTION FOR ANTI-SLAPP RELIEF**

In addition to their motion to dismiss under Rule 12(b)(6), the defendants also move to strike Lichfield's action under California's Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16(b), or, in the alternative, to dismiss the action under Utah's UPEPA, Utah Code § 78B-25-103. The defendants assert that California's statute should control this analysis, while Lichfield argues that the court should apply Utah's statute.

In diversity jurisdiction cases, federal courts apply the forum state's choice-of-law rules. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1236 n.7 (10th Cir. 2014). Under Utah law, courts typically first determine whether there is a meaningful difference between the relevant laws of the different states before engaging in a choice of law analysis. *Volonte v. Domo, Inc.*, 528 P.3d 327, 339 (Utah Ct. App. 2023). Because, as discussed below, the outcome of

18

the defendants' motion is the same under either the California or the Utah statute, the court need not engage in a choice of law analysis at this juncture.

In determining whether to grant a motion to strike or to dismiss under either state's Anti-SLAPP statute, the court must first determine whether the statute applies to the plaintiff's claims. *Serova v. Sony Music Entm't*, 515 P.3d 1, 8 (Cal. 2022) (holding that a court must first determine whether California's anti-SLAPP statute applies); *Mackey v. Krause*, 2025 UT 37, ¶ 38 ---P.3d--- (holding that the first step of analyzing a motion to dismiss under UPEPA "requires the court to determine whether UPEPA applies to all or part of the challenged causes of action"). California's statute applies if the conduct that forms the basis of the Lichfield's claims furthers the exercise of the defendants' free speech rights "in connection with a public issue or an issue of public interest." CAL. CIV. PROC. CODE § 425.16(e). Similarly, Utah's statute applies to Lichfield's claims if they are based on the defendants' exercise of free speech "on a matter of public concern." UTAH CODE § 78B-25-102(2)(c).

There is no real difference (or at least no difference that matters in this case) between the California and Utah standards for determining the applicability of the relevant Anti-SLAPP statute. The defendants have satisfied both standards. The Tenth Circuit has found that "it is clear that there exists a public controversy as to the most effective method of treating at-risk teenagers." *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1137 (10th Cir. 2006). And one district court has specifically found that "the licensing and use of private for-profit teen rehabilitation programs . . . is an issue of public interest" under the California standard. *Diamond Ranch Acad., Inc. v. Filer*, No. 2:14-cv-751-TC, 2016 WL 633351, at *6 (D. Utah Feb. 17, 2016). Moreover, anther court in this district analyzed the "matter of public concern" standard under Utah's UPEPA and found that a troubled teen facility's "actions, business model, tactics, and

19

treatment of vulnerable populations are matters of public concern, as is evident from the repeated news coverage, public documentaries, and recent legislation related to alleged past abuses at" the facility. *UHS of Provo Canyon, Inc. v. Bliss*, No. 2:24-cv-163-DAK-CMR, <u>2024 WL 4279243</u>, at *5 (D. Utah Sept. 24, 2024). The court finds these cases to be persuasive. Under the standard applicable to either California's Anti-SLAPP statute or Utah's UPEPA, the statements and alleged inferences that form the basis of Lichfield's claims involve both an "an issue of public interest" and "a matter of public concern." Accordingly, both statutes apply to the claims in this action.[2]

Under both the California and Utah statutes, courts employ the traditional Rule 12(b)(6) standard to determine whether to grant the motion to strike or to dismiss. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, <u>890 F.3d 828, 834</u> (9th Cir. 2018) ("[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the <u>Federal Rule of Civil Procedure 12(b)(6)</u> standard and consider whether a claim is properly stated."); UTAH CODE § 78B-25-107(1)(c)(ii) (providing that a court shall dismiss an action under the UPEPA if "the moving party establishes that . . . the responding party failed to state a cause of action upon which relief can be granted"). Thus, for the same reasons that the court granted the defendants' motion to dismiss under Rule 12(b)(6), the court also grants the defendants' motion under California's Anti-SLAPP statute and Utah's UPEPA.

Because the defendants prevailed on their Anti-SLAPP motion, they are entitled to an award of attorney fees and costs. CAL. CIV. PROC. CODE § 425.16(c)(1) ("[A] prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and

---

[2] Although Lichfield argued that Kubler's speech did not touch on a matter of public concern in his briefing, he conceded at oral argument that it did.

costs."); UTAH CODE § 78B-25-110 ("[T]he court shall award court costs, reasonable attorney fees, and reasonable litigation expenses related to the motion . . . to the moving party if the moving party prevails on the motion."). The defendants may file a motion for fees and costs that specifies the amount requested.

## CONCLUSION AND ORDER

The court grants the defendants' motion (1) to dismiss pursuant to Rule 12(b)(6) and (2) to strike under California's Anti-SLAPP statute or to dismiss under Utah's UPEPA. Accordingly, the court grants the defendants' request for reasonable attorney fees and costs for bringing its motion.

DATED September 29, 2025.

BY THE COURT

Jill N. Parrish
United States District Court Judge

21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NARVIN LICHFIELD,<br><br>    Plaintiff,<br><br>v.<br><br>KATHERINE KUBLER and NETFLIX, INC.,<br><br>    Defendants. | JUDGMENT<br><br>Case No. 2:24-cv-00458-JNP-CMR<br><br>District Judge Jill N. Parrish |

     IT IS ORDERED AND ADJUDGED that plaintiff Narvin Lichfield's action is dismissed.

     DATED September 29, 2025.

                       BY THE COURT

                         _____
                         Jill N. Parrish
                         United States District Court Judge

# UNITED STATES DISTRICT COURT

for the

DISTRICT OF UTAH CENTRAL DIVISION

| | | |
|---|---|---|
| NARVIN LICHFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-00458-JNP-CMR |
| | ) | |
| KATHERINE KUBLER, | ) | |
| an individual, and | ) | |
| NETFLIX, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF APPEAL

Narvin Lichfield appeals to the United States Court of Appeals for the Tenth Circuit from the final judgment entered in this action on September 29, 2025. Appellant intends to appeal any subsequent order on attorneys' fees and will file an amended notice if necessary under Fed. R. App. P. 4(a)(4)(B)(ii).

Dated: October 24, 2025

/s/ Michael K. Hepworth
Michael K. Hepworth (UT Bar # 15157)
Attorney for Plaintiff Narvin Lichfield
HEPWORTH LEGAL
320 West 500 South Suite 200
Bountiful, UT 84010
michael@hepworthlegal.com
801-872-2222